## Jackson v. Jackson

*Edward Unterberger,* for plaintiff.
*Lynwood F. Blount,* for defendant.

BOLGER, J., June 4, 1973.—Plaintiff is a widow. She seeks to compel defendant, her husband's uncle, to deed over to her a house in his name, claiming that it

was placed in his name in order to get a G.I. mortgage, but that all payments were made by her and her late husband.

The nephew lacked the funds to purchase the house, listed by real estate brokers, J. Raymond Kenny Co. The salesman, Lawrence L. Kerin, told him that the only way to finance it was to get a G.I. to buy the house and secure a G.I. mortgage.

The sale went through in the uncle's name, he assuming the mortgage.

Other than the bare facts of the title and mortgage, there is a dispute on nearly all of the facts.

No testimony was presented by the title insurer or the mortgagee.

Who paid the deposit? Defendant claims his nephew made the down payments with loans from him. The salesman doesn't know the source of the money and plaintiff's testimony is only hearsay.

Who paid the settlement charges? Again, there is a conflict. Defendant testifies that he paid them, and plaintiff claims she and her husband borrowed money to pay them. However, she did not attend the settlement.

It is difficult to determine the source of the money at this stage.

Plaintiff and her husband occupied the house, paid the taxes, water rents, insurance and the monthly payments to the mortgagee. Defendant admits this but claims that it was part of the agreement that these costs were to be paid by plaintiff and husband in lieu of rent.

She and her husband also paid for all repairs to the house; again defendant alleges that this was by agreement.

Under the terms of the G.I. Mortgage Act, the G.I. mortgagor must occupy the house. There is no contro-

versy about the fact that defendant did not do so. He alleges that he was to have a room and that plaintiff's mother-in-law occupied the room and thus plaintiff not only did not carry out the agreement, but made it impossible for him to fulfill this condition.

Plaintiff's husband deserted her and the baby and after his death she could not get a loan to make repairs because title was not in her name. She called defendant and he took over the vandalized house, repaired it and rented it. However, he had difficulty collecting the rents, he alleges, until he changed the lessee. He kept up the mortgage payments and met the water rents, insurance and other charges since he took the house over.

Essentially, the most important issue is whether title was placed in defendant's name solely to meet the G.I. mortgage requirement. The determining factor in the court's opinion is the statement of defendant, made to plaintiff, in the presence of a witness, that he would execute a deed to plaintiffs.

The witness, Orlando Rogers, testified:

"Mrs. Jackson asked him (defendant) about signing over the property to her, that she might get the necessary repairs on it and Jackson [defendant] told her to get the papers drawn up and he would sign them."

On cross-examination the witness altered his testimony:

"She asked him when he was going to sign the property that she and her husband bought in his name over to her."

The court finds as a matter of fact that defendant held title for plaintiff and her husband.

Several grave legal questions arise in this case. The statute of frauds provides that real estate transactions shall be in writing. This agreement was entirely oral. In his motion for a nonsuit, after plaintiff rested, de-

fendant for the first time raised the effect of the statute of frauds. This was too late.

Pennsylvania Rule of Civil Procedure 1030 provides that a failure to raise an affirmative defense by new matter in the answer constitutes a waiver, and this is the well-settled law: Royal Oil & Gas Corp. v. Tunnelton Mining Co., 444 Pa. 105 (1971).

The court finds that defendant waived his affirmative defense of the statute of frauds.

Another problem here is the "clean hands" doctrine of equity. Guaranteed G.I. loans under the Veterans' Benefit Act of September 2, 1958, P. L. 88-857, 72 Stat. 1293, as amended, 38 U. S. C. §1801, et seq., may be made only where the veteran occupies or intends to occupy the property as his home.

Where this provision was violated, the government was entitled to summary judgment for double the gratuity paid out of the public funds to the lender and to the statutory penalty: U.S. v. De Witt, 265 F. 2d 393, (C.A. Tex. 1959), cert. den. 361 U.S. 866, 80 S. Ct. 121, 4 L. Ed 2d 105.

Defendant argues that plaintiff was part of a conspiracy to deceive and defraud the government, and further, that no such conspiracy was entered into by him.

Plaintiff bases her case on a conspiracy to deceive and defraud the government and prima facie does not come into court with clean hands. Defendant firmly contends that he acted in good faith, that there was no agreement to convey title to plaintiff and her husband, that it is an open and above-board transaction as far as he is concerned, and that he fully complied with all the G.I. Act requirements; that he intended to occupy the house but that his failure to do so was due entirely and solely to the refusal of plaintiff and her husband

to carry out their end of the agreement and to permit him to do so.

The court concludes as a matter of law that if such a conspiracy existed, plaintiff was not a party to it and, therefore, does not offend the clean hands doctrine.

The final point to be considered is the possible application of the "dead man's statute": Act of May 23, 1887, P. L. 158, sec. 5, cl. (e), 28 PS §322.

Plaintiff objects to defendant presenting testimony of conversations with the deceased, plaintiff's husband. However, plaintiff's testimony relied to a great extent on statements of the deceased husband and the court finds that she thus waives the use by defendant of testimony of the same nature. Plaintiff opened the door and has no valid reason to bar defendant from entering through the same door.

### DECREE NISI

And now, June 4, 1973, it is hereby ordered, decreed and adjudicated that the complaint of plaintiff, Thelma Jackson, is granted and defendant, John W. Jackson, Jr., shall execute and deliver to plaintiff, Thelma Jackson, a deed to the premises 2531 North Corlies Street, Philadelphia, Pa., subject to such valid encumbrances as existed at the time defendant took physical possession of the premises, and that defendant account to plaintiff for all money received as rents, less all disbursements by him.

The Prothonotary of Philadelphia County is directed to file this adjudication, enter the within decree nisi, give notice to the parties or counsel of record as required by the rules of equity practice in Pennsylvania, and, unless exceptions are filed to this decree nisi within 20 days after the said notice, this shall be entered as a final decree by the prothonotary.